**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
_____
                               :
ROBERT F. O'NEILL,             :
                               :
          Petitioner,          :     Civil No. 07-4410 (RBK)
                               :
     v.                        :
                               :         O P I N I O N
CHARLES E. ALBINO, et al.,     :
                               :
          Respondents.         :
_____:
```

**APPEARANCES:**

> ROBERT F. O'NEILL, #434022/568748C
> Southern State Correctional Facility
> Delmont, New Jersey  08314
> Petitioner pro se
>
> David Weaver, Sussex County Prosecutor
> GREGORY R. MUELLER, Assistant Prosecutor, Sussex County
> Sussex County Prosecutor's Office
> 19-21 High Street
> Newton, New Jersey  07860
> Attorneys for Respondents

**Kugler, District Judge**

ROBERT F. O'NEILL ("Petitioner") filed a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254(a) ("Petition"), challenging application of the No Early Release Act, N.J.S.A. § 2C:43-7.2 ("NERA") to his sentence imposed as a result of Petitioner's guilty plea to the offense of vehicular homicide. See Docket Entry No. 8 at 1-2. Petitioner asserted that application of NERA to his sentence violated the Ex Post Facto Clause and Due Process Clause. See id. at 7-18. Respondents filed an answer

seeking dismissal of the petition ("Answer"), see Docket Entry No. 7, and Petitioner filed his traverse ("Memorandum"). See Docket Entry No. 8. For the reasons expressed below, the Court will dismiss the Petition and deny a certificate of appealability.

## BACKGROUND

Petitioner duly exhausted the issue presented for this Court's collateral review; the state courts affirmed application of NERA to Petitioner's sentence. This Court advised Petitioner of his rights, pursuant to the holding of Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), and Petitioner confirmed his decision to limit his challenge to the NERA issue.

While Petitioner's submission is lengthy, his challenge could be reduced to the sole sentence utilized by Petitioner as the heading for his legal argument, "Imposition of [NERA] sentence for [a vehicular homicide] crime [which] occurred prior to 2001 NERA amendment violates the Ex Post Facto and Due Process Clauses of the . . . Constitution."  Mem. at 7.

## STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an
> application for a writ of habeas corpus in
> behalf of a person in custody pursuant to the
> judgment of a State court only on the ground
> that he is in custody in violation of the
> Constitution or laws or treaties of the United
> States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982). "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citation omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

A district court must give deference to determinations of state courts. Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996). Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002). Where a federal claim was "adjudicated on the merits"[1] in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are

---

[1] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001).

4

materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable. Id. at 409-10.


**DISCUSSION**

**A.    The Ex Post Facto and Due Process Tests**

The Ex Post Facto Clause of the U.S. Constitution bars only those "enactments, which by retroactive operation, increase the punishment for a crime after its commission."[2] Garner v. Jones,

---

[2] Not every retroactive change violates the Ex Post Facto Clause, even if the change creates a risk of affecting a particular inmate's terms of confinement. See Garner, 529 U.S. at 250 (citing Morales, 514 U.S. at 509). A petitioner must show both a retroactive change in law or policy and that this change caused individual disadvantage by creating a significant risk of increasing his punishment." Richardson v. Pa. Bd. of Prob. & Parole, 423 F.3d 282, 284 (3d Cir. 2005) (emphasis removed, internal quotations and citations omitted); see also Mickens-Thomas v. Vaughn, 321 F.3d 374, 384 (3d Cir. 2003).  The Supreme Court guided that, "[t]he question is 'a matter of degree,'" see id. (continued...)

529 U.S. 244, 249-50 (2000) (relying on <u>Lynce v. Mathis</u>, 519 U.S. 433, 445-446 (1997); <u>Cal. Dep't of Corr. v. Morales</u>, 514 U.S. 499, 508-509 (1995); and <u>Collins v. Youngblood</u>, 497 U.S. 37, 42 (1990)). The Due Process Clause protects an individual's interests "in fair notice and repose that may be compromised by retroactive legislation."[3]  <u>Landgraf v. USI Film Prods.</u>, 511 U.S. 244, 266 (1994).


**B.   <u>Application of NERA to Petitioner Is a State Law Issue</u>**

The No Early Release Act, N.J.S.A. 2C:43-7.2, "requires that one convicted of a first or second degree 'violent crime' is ineligible for parole release until he or she . . . served eighty-five percent of the sentence imposed for that crime." <u>State v. Griffith</u>, 336 N.J. Super. 514, 515 (N.J. Super. Ct. App. Div. 2001).  The term "violent crime" was originally defined as one "in which the actor causes death [or] serious bodily injury . . . or uses or threatens the immediate use of a deadly weapon." N.J.S.A.

---

[2](...continued)
(citing <u>Morales</u>, 514 U.S. at 507, 510), and, if the amended law neither modifies the statutory punishment imposed for any particular offenses nor alters the initial date for parole eligibility or the suitability standard.  <u>See</u> <u>Garner</u>, 529 U.S. at 250.

[3]
To analyze a due process claim, a Court conducts a familiar two-part inquiry: a Court determines whether the petitioner "was deprived of a protected interest, and, if so, what process was his due." <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 428 (1982).

2C:43-7.2(d).  Effective June 29, 2001, NERA was amended, and the term "violent crime" was substituted by a list of specific offenses to which NERA applied; the list expressly included vehicular homicide.  Petitioner, however, was sentenced prior to this amendment, that is, pursuant to the original broad definition of the term "violent crime" through the use of phrase "the actor causes death [or] serious bodily injury."  The parties do not dispute that the original umbrella definition of the term "violent crime" was in effect at the time when Petitioner committed his offense, same as the parties are in complete agreement as to the fact that the aforesaid 2001 amendment of NERA took place after Petitioner's offense was committed.

Moreover, Petitioner does not dispute the self-evident fact that his driving actually caused death of the victim.  Petitioner, however, asserts that--literal reading of the phrase "the actor causes death [or] serious bodily injury" regardless--original scope of NERA did not apply to vehicular homicide.  In support of this proposition, Petitioner offers his take on the issue of why NERA was amended in 2001, _i.e._, he asserts that NERA was amended in response to three decisions issued by the Superior Court of New Jersey, Appellate Division; according to Petitioner, the state courts held that the pre-amendment version of NERA did "not apply to murder; therefore, the 85% parole ineligibility must [have] be eliminated."  Mem. at 11-12.  Petitioner further asserts that, in

7

State v. Parolin, 171 N.J. 223, 232 (2002), the Supreme Court of
New Jersey found that "the amended version of NERA could not be
retroactively applied" within the meaning that the NERA enhancement
could not apply to crimes enumerated in the post-amendment list but
deemed outside the scope of NERA under the pre-amendment language.
 Id. at 12.  From these readings of legislative history and the
holding of Parolin, Petitioner deduces a three-step conclusion,
namely: (1) the pre-amendment version of NERA could not apply to
vehicular homicide (since a victim of such offense is "murdered,"
although not within the meaning of the actual criminal offense of
murder, as codified by penal law, but rather within the colloquial
meaning of the word, that is, having died as a result of the
offense); (2) thus, Petitioner must have had his sentence enhanced
under the post-amendment language of NERA (containing the list of
applicable offenses, vehicular homicide included); and (3)
application of the post-amendment version of NERA to Petitioner
violated Ex Post Facto and Due Process Clauses under the holding of
Parolin.

Petitioner, however, errs in every step of his argument.[4]  To start, Petitioner's take on to the legislative history differs from the actual events and, in addition, fails to meet the test of simple logic.  Indeed, had the Appellate Division found that any colloquial "murder," that is, any offense resulting in death of the victim, fell outside the scope of the pre-amendment version of NERA, such conclusion by the Appellate Division would effectively "repeal" the pre-amendment NERA (drafted to apply, <u>inter alia</u>, to the "actor [who] causes death") and re-legislate, in its place, another pre-amendment version, applying only to the "actor [who] causes . . . serious bodily injury."  The Appellate Division, indeed, did nothing of the kind.  In reality, the reason for the 2001 amendment of NERA was different; the basis for the amendment was explained in <u>Parolin</u>, that is, the case expressly relied upon by Petitioner himself.  In <u>Parolin</u>, the Supreme Court of New Jersey explained as follows:

> The law was changed in response to the Appellate Division decisions in <u>State v. Manzie</u>, 335 N.J. Super. 267, 276, 762 A.2d 276 (2000) (holding that NERA does not apply to murder *because there is a separate sentencing scheme for murder*), <u>aff'd</u>, 168 N.J. 113(2001), <u>State v. Mosley</u>, 335

---

[4]   Respondents appear to be under the impression that Petitioner's confusion ensued from the very fact of enactment of the 2001 amendment (that is, from the substitute of the pre-amendment umbrella language with a specific list of numerated offenses).  <u>See</u> Ans. at 4-5.  This Court disagrees with Respondents' reading of Petitioner's submissions. While Petitioner is incorrect in his argument, it appears that, at no point, Petitioner pegged his hopes to the simple fact of the NERA amendment being enacted.

> N.J. Super. 144, 149, 761 A.2d 130 (2000) (holding that
> NERA does not apply to *tender years sexual assaults*
> *without physical force*), certif. denied, 167 N.J. 633,
> 772 A.2d 934 (2001), and <u>State v. Thomas</u>, 322 N.J. Super.
> 512, 515-16 (1999) (same), <u>aff'd</u>, 166 N.J. 560 (2001).
> [<u>See</u>] Assembly Appropriations Committee, Statement to
> Assembly Bill No. 3201, at 1 (June 4, 2001).

<u>State v. Parolin</u>, 171 N.J. at 232 (emphasis supplied).

Hence, in no ambiguous terms, the <u>Parolin</u> court explained the reason for the Appellate Division's confusion as to the applicability of NERA to murder (that is, "murder" within the meaning of the actual criminal offense rather than a colloquial term): that reason was rooted in the *specific sentencing scheme unique to this grave crime* and the potential conflict between that unique sentencing scheme and the broad language of NERA. See <u>id.</u>; see also <u>Manzie</u>, 335 N.J. Super. 267. Similarly, the Parolin court explained that the confusion as to the applicability of NERA to cases like <u>Mosley</u> and <u>Thomas</u> was a result of unique circumstances of those cases (that is, cases where a defendant was charged with sexual assault for the act of touching, with his finger and without using any force, an underage's victim's genital area), since NERA's requirement of "physical force" was left unsatisfied due to the lack of an independent act of force or threat of the same. See <u>Parolin</u>, 171 N.J. at 232; see <u>also</u> <u>Thomas</u>, 166 N.J. 560.

Indeed, nothing in the language of <u>Parolin</u>, its progeny (or cases discussed by the <u>Parolin</u> court) suggests that the state courts, at any point, failed to recognize their lack of legislative

mandate to "repeal" the NERA language, as drafted, and attempted to defy the legislature by making the pre-amendment statute inapplicable to all possible criminal offenses where the "actor causes death" of the victim through an act of physical force while committing the offense.[5]  See Parolin, 171 N.J. at 232.  Moreover, at no point, the state courts even attempted to interpret the pre-amendment NERA language as inapplicable to offenses that: (a) result in death of the victim, (b) require usage of physical force

---

[5]     Petitioner's reading of the ex post facto aspect of Parolin appears to be even more defective than his reading of NERA's legislative history.  In Parolin, defendant admitted that, during the commission of his offense (namely, possession of a weapon for an illegal purpose), he pointed a loaded gun at his former girlfriend in a purported effort to scare her away.  The sentencing court held that the facts admitted supported a sentence enhancement under the umbrella language of the pre-amendment NERA (because the conduct involved was a violent crime), but elected not to impose an enhanced sentence because, after the commission of crime but prior to the sentencing, the offense of possession of a weapon for an illegal purpose was *removed* from the scope of NERA by the amendment of the statute (through the entry of the list of specific offenses).  In other words, the sentencing court capitalized on the fact that, for the purposes of the NERA enhancement, the offense examined in Parolin stopped being an applicable crime.  Reversing the lower courts' decisions, the Supreme Court of New Jersey concluded that the change (caused by the entry of the list of specific offenses) applied prospectively only, i.e., that the sentencing court erred in "decriminalizing" the offense retroactively for the purposes of NERA and *directed to apply the pre-amendment sentence enhancement*.  Consequently, the holding of Parolin: (1) is inapplicable to Petitioner because the amendment in no way "decriminalized" Petitioner's offense for the purposes of sentence enhancement; and (2) runs expressly against Petitioner's position, since the holding of the case *mandates broad application of the pre-amendment umbrella language to all offenses committed prior to the amendment*.  This Court, therefore, notes its utter bewilderment with Petitioner's seemingly inexplicable decision to rely on Parolin and the cases the Parolin court examined.

by defendant, and (c) lack its own unique sentencing scheme.  To the contrary--as Defendants correctly point out--the state courts consistently read the broad pre-amendment language of NERA as applicable to these type of offenses, including the very offense to which Petitioner pled guilty, that is, vehicular homicide.  See Ans. at 4-5 (citing State v. Jarrells, 181 N.J. 538 (2004) (expressly addressing the challenge identical to that of Petitioner's), State v. Wade, 169 N.J. 302 (2001) (making a substantive finding to the same effect and examining the scope of the pre-amendment language), State v. Ferencsik, 326 N.J. Super. 228 (N.J. Super. Ct. App. Div. 1999) (a case finding NERA applicable to vehicular homicide long before the NERA amendment was even contemplated)).

Consequently, Petitioner's application is, effectively, nothing more than an invitation to this Court to overrule the state courts' interpretation of state law.  That this Court cannot do, even if the Court is to hypothesize, somehow, that the state courts failed in their endeavor of interpreting the pre-amendment NERA. "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson, 117 F.3d at 110.  "[I]t is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d at 414; see also Zimmerman, 768 F.2d at 71, 73.

Having determined that the pre-amendment umbrella language of NERA was consistently interpreted by the state law as applicable to Petitioner's offense prior to and at the time when the offense was committed, this Court is constrained to dismiss Petitioner's constitutional challenges.  The change of NERA in 2001, for the purposes of Petitioner's particular offense, was of no consequence, even though the amendment spelled out what was already clearly implied.

The record before this Court provides it with no reason to conclude that the enhancement of Petitioner's sentence was enabled by a retroactive application of the NERA post-amendment language; rather, it appears abundantly clear that Petitioner was duly sentenced under the pre-amendment-NERA legal regime.  Consequently, Petitioner's application alleges no acts that violated either the Ex Post Facto or Due Process Clauses.  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable." Engle, 456 U.S. at 120 n.19.  Therefore, Petitioner's application has to be denied.

## CERTIFICATE OF APPEALABILITY

The Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a

13

constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

Since the state courts' interpretation of the pre-amendment NERA as a provision applicable to Petitioner's sentence presents a state law issue not amenable to this Court's review, and that interpretation was applied to Petitioner's sentence without any violation of his rights under the Ex Post Facto and Due Process Clauses, this Court will deny Petitioner's application on the merits. A certificate of appealability will not issue.

An appropriate Order accompanies this Opinion.


S/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge


Dated: May 1, 2008